UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS DELANE ZOLICOFFER,

    Movant,

                                       Case No. 1:15-CV-1032

v.

                                       HON. JANET T. NEFF

UNITED STATES OF AMERICA,

    Respondent.
_____/

## **O P I N I O N**

This matter comes before the Court on Movant Marcus Zolicoffer's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. (ECF No. 1.) On January 19, 2016, the Government filed a response in opposition. (ECF No. 13.) For the reasons that follow, Movant's § 2255 motion is denied.

### I.

On August 8, 2012, a grand jury returned an indictment charging that, from in or about early 2008 until in or about February 2009, Zolicoffer, "did knowingly and intentionally combine, conspire, confederate, and agree together and with others known and unknown to the Grand Jury to distribute 280 grams or more of . . . cocaine base, a Schedule II controlled substance," in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). (*United States v. Zolicoffer*, No. 1:12-cr-194 (W.D. Mich.), Indictment, ECF No. 1.) On January 24, 2013, the Government filed an information and notice of prior felony drug conviction. (*Id.* at ECF No. 39, PageID.158-59.) Zolicoffer had a prior felony drug conviction in Michigan for delivery of cocaine in 1994, for which he received a

sentence of 7 to 20 years in state prison. (*Id.* at ECF No. 39, PageID.158-59; *Id.* at ECF No. 55, PageID.264.)

Zolicoffer's two-day trial began on February 4, 2013. The Court heard testimony from several witnesses, including one of Zolicoffer's customers, Michael Newman. Newman testified that he spent between $600 and $800 every two weeks on crack cocaine, which he bought from Zolicoffer, Zolicoffer's distributors, or others. (*Id.* at Trial Tr. II, ECF No. 66, PageID.530.)

Jamie Kozlowski, one of Zolicoffer's associates, also testified. In 2008, she agreed to allow Zolicoffer to stay at her house—using and selling crack—in exchange for help with her bills. (*Id.* at Trial Tr. I, PageID.487-88, 491.) In the spring of 2008, Jerry Boss, Zolicoffer's co-defendant, began going to Kozlowski's house to sell crack to Zolicoffer, and spoke with Zolicoffer about dealing crack in Traverse City. (*Id.* at Trial Tr. I, PageID.441-42.) Boss started delivering half an ounce of crack to Zolicoffer at Kozlowski's house, and customers came to the house to purchase crack from Zolicoffer. (*Id.* at Trial Tr. I, PageID.442-43.)

During the summer of 2008, Kozlowski drove Zolicoffer to 10 or more locations a day to sell half a gram or one gram of crack, and Zolicoffer always carried at least 3 and a half grams of crack on his person. (*Id.* at Trial Tr. I, PageID.488-90.) More than 10 times, Kozlowski weighed the crack for Zolicoffer: 5 and a half grams weighed into individual grams or half grams, although Zolicoffer's grams weighed .8 of a gram. (*Id.* at Trial Tr. I, PageID.495-97.) Zolicoffer would package a half ounce of crack, which is 12 grams, into .8-gram packages to sell for $100, and would keep the .2 gram left over from each. (*Id.* at Trial Tr. I, PageID.443-44.)

From July 2008 through February 2009, Boss testified that he went to Traverse City every other week with one or two ounces of crack each time. (*Id.* at Trial Tr. I, PageID.444.) Typically, Boss traveled to Traverse City on a Thursday, and gave Zolicoffer enough crack to cover Zolicoffer's orders. Boss would stay at a hotel with the rest of the crack until Zolicoffer ran out and called Boss for more, and then Boss would take more crack to Zolicoffer. (*Id.* at Trial Tr. I, PageID.452.) Boss would return to Grand Rapids on Sunday, or whenever the two ounces of crack was gone. (*Id.* at Trial Tr. I, PageID.453.) Boss paid about $2,200 for two ounces, and Zolicoffer paid him about $5,000 for that amount. (*Id.*) Then Zolicoffer would package the crack in .8-gram increments, which he sold as a gram for $100. (*Id.* at Trial Tr. I, PageID.443-44, 454.) In addition to selling, Zolicoffer also used crack, but Boss did not. (*Id.* at Trial Tr. I, PageID.457-58.) During cross-examination, Boss confirmed that his agreement to distribute over 280 grams of cocaine in Traverse City was only with Zolicoffer. (*Id.* at Trial Tr. I, PageID.468-71.) Boss sold all of the crack that he took with him to Traverse City to Zolicoffer, with the exception of small quantities that Boss sold to Zolicoffer's associates, Kozlowski and Lowe. (*Id.* at Trial Tr. I, PageID.447-48, 459-60, 468-69.)

In late 2008, Zolicoffer moved out of Kozlowski's house and began selling crack from the house of Connie Lowe. (*Id.* at Trial Tr. I, PageID.446.) Lowe was a crack-cocaine addict who had met Zolicoffer in 2008; she purchased between half a gram and three grams of crack cocaine from him for $100 a gram every other week. (*Id.* at Trial Tr. I, PageID.407-09.) Lowe moved into a home on Silver Shores in Traverse City in August 2008, and about three weeks after she moved, she began letting Zolicoffer use her car and house in exchange for crack cocaine. (*Id.* at Trial Tr. I, PageID.407-11.) Zolicoffer paid Lowe one gram of crack cocaine each time he used her car for a

3

day or two, and he also gave her one to two grams each time she let him use her house to distribute crack cocaine. (*Id.* at Trial Tr. I, PageID.407-12.) Lowe often saw Zolicoffer with an ounce of crack cocaine at her house, and sometimes Zolicoffer cooked cocaine into crack cocaine there. (*Id.* at Trial Tr. I, PageID.415-16.) She testified that her crack-cocaine addiction worsened when Zolicoffer "started using my car and started having people come to my home and was feeding me dope like candy." (*Id.* at Trial Tr. I, PageID.426.) She explained that Zolicoffer "was bringing people into my home and literally took over my home[.]" (*Id.*)

Another witness, Rachel Oblinsky, testified about Zolicoffer and Boss dealing crack cocaine together during this time. (*Id.* at Trial Tr. II, PageID.540.) In 2008, Oblinsky traveled to Grand Rapids with Boss and Zolicoffer to get crack. (*Id.* at Trial Tr. II, PageID.541-42.) Oblinsky carried at least two ounces of crack on her person during the trip back to Traverse City. (*Id.* at Trial Tr. II, PageID.544.)

Randall Bambeneck, Lowe's fiancé, also testified about Zolicoffer and Boss selling crack cocaine from Lowe's house. (*Id.* at Trial Tr. II, PageID.512-13.) From late December 2008 to February 11, 2009, Bambeneck purchased more than 50 grams of crack from Zolicoffer and Boss at Lowe's house. (*Id.* at Trial Tr. II, PageID.514, 517-18.)

On February 10, 2009, around 8:30 p.m., Police Officer Karen Shipley, acting undercover, was involved in a $250 purchase of 3.5 grams of crack cocaine from Lowe at Kim Roth's house. (*Id.* at Trial Tr. I, PageID.373-74, 388.) Officer Shipley provided Roth the $250, which had been photocopied to record the bills' serial numbers. (*Id.* at Trial Tr. I, PageID.373-75.) After the crack-cocaine purchase, surveillance officers followed Lowe when she left Roth's house. (*Id.*) Lowe took

the money back to her house and gave it to Zolicoffer. (*Id.* at Trial Tr. I, PageID.417.) That evening, Boss and Zolicoffer were at Lowe's house, and Zolicoffer and Kozlowski had an ounce of crack cocaine that they were weighing out and bagging up. (*Id.* at Trial Tr. I, PageID.418, 427, 429-30.)

Around 2:00 a.m. on February 11, the police executed a search warrant at Lowe's house. (*Id.* at Trial Tr. I, PageID.381.) Just before the police arrived, Lowe testified that Zolicoffer received a phone call and started to shout something like "put your stuff away" or "clean house." (*Id.* at Trial Tr. I, PageID.419.) The police found nine people in the home, including Lowe, Zolicoffer, Boss, Kozlowski, Newman, and Sabrina Dedrick. (*Id.* at Trial Tr. I, PageID.381-82.) An officer searched Boss and found a large amount of currency in his front pocket; a comparison of the serial numbers confirmed that Boss had $240 of the $250 the uncover agent gave Roth to purchase the crack cocaine from Lowe earlier that evening. (*Id.* at Trial Tr. I, PageID.384-86.) Officers also discovered 32 grams of crack cocaine inside Dedrick's body. (*Id.* at Trial Tr. I, PageID.399-402.)

During trial, Boss testified that a woman drove him and Dedrick to Traverse City on February 10, 2009, and Dedrick carried Boss's crack on her person in case they were stopped by the police. (*Id.* at Trial Tr. I, PageID.449.) The woman drove Boss to Lowe's house, and Boss gave Zolicoffer one half ounce of crack and Dedrick continued to hold the remaining 32 grams. (*Id.* at Trial Tr. I, PageID.450.) Zolicoffer paid Boss $550 for the half ounce of crack, which Boss put in his pocket. (*Id.* at Trial Tr. I, PageID.450-51, 461.) Minutes before the police arrived, Zolicoffer received a phone call that said the police were coming. (*Id.* at Trial Tr. I, PageID.454.)

5

Kozlowski testified that she was at Lowe's house on February 11, 2009, because she was there to purchase an ounce of crack from Zolicoffer. (*Id.* at Trial Tr. I, PageID.480-81.) When Kozlowski arrived at Lowe's house, she waited with Zolicoffer for Boss to bring the crack. (*Id.* at Trial Tr. I, PageID.482.) Boss arrived, and Zolicoffer gave Kozlowski half an ounce of crack, which Kozlowski took into a back room to weigh and package it. (*Id.* at Trial Tr. I, PageID.482, 502-03.) Zolicoffer told her that she should make each package weigh .7 grams, so that she could make more money. (*Id.* at Trial Tr. I, PageID.483.) The .7-gram packages would be sold as grams for $100 a piece. (*Id.* at Trial Tr. I, PageID.484.) When Zolicoffer announced that the police were on their way, Kozlowski threw the half ounce of crack into the washing machine. (*Id.*)

After the police searched her home, Lowe pleaded guilty to maintaining a drug house and delivery of cocaine in state court; she was paroled in November 2009. (*Id.* at Trial Tr. I, PageID.419-20, 424-24.) Boss, who was named in the federal indictment charging Zolicoffer, pleaded guilty to conspiring with Zolicoffer to distribute 280 grams or more of cocaine base from in or about early 2008 to in or about February 2009. (*Id.* at Trial Tr. I, PageID.468.)

Zolicoffer did not testify, and he did not present any evidence at trial. (*Id.* at Trial Tr. II, PageID.563-66.) The jury found him guilty of conspiracy to distribute cocaine base and found the amount of cocaine base involved was 280 grams or more. (*Id.* at ECF No. 44, PageID183.) On June 19, 2013, the Court sentenced Zolicoffer to 240 months in prison, 10 years of supervised release, and a $100 special assessment. (*Id.* at ECF No. 67, PageID.650; *id.* at ECF No. 59, PageID.302-07.) Zolicoffer filed a notice of appeal on June 27, 2013. (*Id.* at ECF No. 60, PageID.308.) During the district court proceedings, John Frawley represented Zolicoffer. On appeal, Kenneth Tableman represented Zolicoffer. The Sixth Circuit affirmed Zolicoffer's conviction and sentence on June 30,

2014. *United States v. Zolicoffer*, 570 F. App'x 540 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 234 (2014).

Zolicoffer filed this *pro se* motion for post-conviction relief on October 8, 2015, raising two claims of prosecutorial misconduct and two claims of ineffective assistance of counsel. (ECF No. 1.) Zolicoffer filed supplements to his original § 2255 motion on October 27, 2015 (ECF No. 8), March 15, 2016 (ECF No. 16), and April 11, 2016 (ECF No. 17).

## II.

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the petitioner shows either (1) "cause" and "actual prejudice" or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Id.*

### III.

**A. Prosecutorial Misconduct**

To prevail on a claim of prosecutorial misconduct, Zolicoffer must show that the prosecutor's conduct was "so egregious as to deny a petitioner a fundamentally fair trial[.]" *Johnson v. United States*, 47 F.3d 1169, 1995 WL 27406, at *2 (6th Cir. 1995) (table) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974)).

**1. Defective indictment**

Zolicoffer alleges that the prosecution "presented known false and perjurious testimonies before the grand jury to secure the return of the bill of indictment against [him]." (ECF No. 1, PageID.4.)

The general rule is that the sufficiency of an indictment cannot be challenged in a § 2255 motion if, under any reasonable construction of the indictment, a crime is charged and the accused is fairly apprised of the crime intended to be alleged. *Clinkscale v. United States*, 367 F. Supp. 2d

1150, 1157 (N.D. Ohio 2005) (citing *Walker v. United States*, 439 F.2d 1114, 1115 (6th Cir. 1971), *Eisner v. United States*, 351 F.2d 55, 57 (6th Cir. 1965), and *United States v. Boyd*, 259 F. Supp. 2d 699, 708 (W.D. Tenn. 2003)). In addition, any error by the prosecution before the grand jury, including the use of perjured testimony, is harmless where the defendant was subsequently convicted by the petit jury. *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996) (citing *United States v. Mechanik*, 475 U.S. 66, 71-73 (1986)).

Zolicoffer has not identified a defect in the indictment itself. The indictment clearly indicates that Zolicoffer is charged with the crime of conspiracy to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(iii), satisfying *Walker*'s requirements. (*Zolicoffer*, No. 1:12-cr-194, at ECF No. 1.) Further, a jury convicted Zolicoffer of this charge following a two-day trial. Therefore, under *Cobleigh*, Zolicoffer's claim is meritless.

**2. Conviction and sentence**

Zolicoffer also alleges that the prosecution "improperly and unlawfully suborned known perjured testimonies at trial and during [s]entencing solely to convict and subject petitioner Zolicoffer to much harsher sentencing as a result of petitioner's refusal to become an informant against alleged co-conspirator, Jerry Dale Boss and other drug dealers and drug users in the Traverse City, Michigan area." (ECF No. 1, PageID.5.)

On direct appeal, Zolicoffer alleged prosecutorial vindictiveness to punish him for not accepting the plea bargain. The Sixth Circuit held that "Zolicoffer ha[d] made a bare allegation of prosecutorial vindictiveness. He [did] not present[] any direct or objective evidence to show the

9

prosecutor acted vindictively. Nor [did] he present[] evidence sufficient to raise a presumption of vindictiveness." *Zolicoffer*, 570 F. App'x at 543.

Once again, Zolicoffer has made a bare allegation of prosecutorial vindictiveness. First, it is well within the discretion of prosecutors to attempt to induce criminal defendants to supply information. *United States v. Jackson*, 818 F.2d 867, 1987 WL 37394, at *1 (6th Cir. 1987) (table) (citing *People of Territory of Guam v. Fegurgur*, 800 F.2d 1470, 1472 (9th Cir. 1986)).

Second, Zolicoffer focuses on Boss's statements made in a post-indictment, pre-trial interview with the Assistant United States Attorney and a law enforcement officer to argue that some of Boss's statements were lies. But a proffer is not a statement given under oath. And the report is the officer's recollection of what was said during the proffer, not a statement from the person giving the proffer himself. During trial, Boss testified that, from July 2008 to February 2009, he traveled to Traverse City every other week with one or two ounces of crack each time. He also testified that his agreement to distribute over 280 grams of cocaine was only with Zolicoffer, and that all of the crack that he took to Traverse City went to Zolicoffer and his associates. Boss's testimony was largely corroborated by other trial witnesses. The jury heard several witnesses testify, and it was their job to determine which witnesses to believe. A court "may not 'weigh the evidence, consider the credibility of witnesses, or substitute [its] judgment for that of the jury.'" *Zolicoffer*, 570 F. App'x at 542 (quoting *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006)).

On direct appeal, Zolicoffer raised a sufficiency-of-evidence claim, and the Sixth Circuit affirmed that "[t]he evidence at trial was sufficient to prove a conspiracy [to distribute 280 grams or more of cocaine base] between Zolicoffer and Boss." *Zolicoffer*, 570 F. App'x at 542-43. "A

§ 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances," such as "an intervening change in the law." *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). Zolicoffer does not cite an intervening change in the law. Rather, he appears to make another attempt to challenge the sufficiency of the evidence guised as a prosecutorial-misconduct claim. The record refutes Zolicoffer's claim, so it is also meritless.

### B. Ineffective Assistance of Counsel

To succeed on an ineffective assistance of counsel claim, Zolicoffer must establish that (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.* Zolicoffer bears the burden of proof for each prong, and the Court may dismiss a claim of ineffective assistance of counsel if he fails to carry his burden of proof on either one. *Id.* at 687, 697.

When evaluating the *Strickland* prongs, the Court must afford "tremendous deference to trial counsel's decisions." *Campbell v. Coyle*, 260 F.3d 531, 551 (6th Cir. 2001). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, the purpose of which is "to protect lawyers from having strategic decisions judged with 'the distorting effect of hindsight.'" *Boria v. Keane*, 99 F.3d 492, 498 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

#### 1. Ineffective assistance of trial counsel

Zolicoffer claims that "[t]rial counsel's performance was constitutionally deficient

11

throughout the pretrial stage of the proceeding and at trial and at [s]entencing." (ECF No. 1, PageID.6.) He alleges that he "continuously requested that counsel conduct pretrial interviews with all of the government's witnesses." (ECF No. 2, PageID.21-22.) But defense counsel had the grand jury testimony and reports of many of the trial witnesses. During cross-examination, counsel referenced several witnesses' prior grand jury testimony, so he was familiar with what each witness had previously testified to before the grand jury. (*Zolicoffer*, No. 12-cr-194, at Trial Tr. I, PageID.427, 501, 536, 546.) To supplement his § 2255 motion, Zolicoffer filed an affidavit from his daughter, where she explained that, during trial, she told trial counsel that Boss lied while testifying about her father's involvement. (ECF No. 16, PageID.95.) But after Boss testified, Zolicoffer agreed that the defense would not call any witnesses or present any evidence. (*Id.* at Trial Tr. II, PageID.565.) After the prosecution rested its case-in-chief, the following exchange occurred:

> THE COURT: Now, I presume from what is said here that your attorney does not wish to call witnesses on your behalf, and may I assume that you have conferred with him about that?
>
> DEFENDANT ZOLICOFFER: Yes, I have.
>
> THE COURT: And is it fair to assume that you are in agreement with him or he is in agreement with you that there will -- no witnesses will be called?
>
> DEFENDANT ZOLICOFFER: Yes.
>
> THE COURT: You understand that you're giving up the right to call any witnesses in your defense that you might have at this time?
>
> DEFENDANT ZOLICOFFER: Yes.
>
> THE COURT: Any questions about that right you're giving up?
>
> DEFENDANT ZOLICOFFER: No, I don't.
>
> THE COURT: You understand that having done this, that we will close the proofs at this time and the government's attorney will argue to the jury and summarize and your counsel, Mr. Frawley, will summarize to the jury and the Court will instruct the jury and the jury will proceed to render a verdict then? You understand that's the process?

12

> DEFENDANT ZOLICOFFER: Yes.
>
> THE COURT: And that no inference -- the jury will be instructed that no inference against you can be drawn from the fact that you have not testified nor called any witnesses. Understand that?
>
> DEFENDANT ZOLICOFFER: Yes.
>
> THE COURT: Do you have any question about the proceedings thus far or any complaint to make about anything in the proceedings?
>
> DEFENDANT ZOLICOFFER: No, I don't.

(*Zolicoffer*, No. 12-cr-194, at Trial Tr. II, PageID.565-66.) Zolicoffer has not shown that any trial witness would have agreed to be interviewed by defense counsel or that the interview would have yielded information that would have changed the outcome of trial. Thus, Zolicoffer has failed to show any prejudice from counsel's alleged failure to interview the trial witnesses.

Similarly, in a supplement, Zolicoffer contends that he provided counsel with the names of 14 people that had illegal dealings with Boss and Xavier Libbett, another drug dealer in Traverse City, and counsel did not investigate these witnesses. (ECF No. 17, PageID.102.) But Zolicoffer does not allege what information these witnesses could have provided that would have changed the outcome of trial. He simply asserts that these individuals "are known to have dealt with both of the government's star witnesses in the drug business [Boss and Libett] and are the reasons both cooperating witnesses falsified and fabricated their trial testimonies against me." (*Id.*) As discussed *supra*, Zolicoffer expressly agreed with the decision not to call any defense witnesses. Zolicoffer also argues that his attorney gave Zolicoffer bad advice when he advised Zolicoffer not to take the stand. (ECF No. 17, PageID.107.) But Zolicoffer has failed to show any prejudice, so this claim is without merit.

Zolicoffer also alleges that he requested chain-of-custody evidence and independent testing

13

on the drugs found on Dedrick, and that defense counsel was deficient for failing to do so. He also argues that counsel did not adequately prepare cross-examination questions of the officers about the drug evidence. But defense counsel could not independently test the drug evidence because it had been destroyed prior to Zolicoffer's federal case. During trial, counsel argued that the drug evidence's destruction was a shortcoming in the Government's case, so the jury was aware of this fact. Counsel also questioned Agent Maxwell about how she conducted Dedrick's search to find the drugs. (*Zolicoffer*, No. 12-cr-194, at Trial Tr. I, PageID.402-04.) Also, defense counsel was familiar with the police reports and the lab report, which indicated that the drugs had been tested and contained 18.89 grams of cocaine base. (Attachment 1, ECF No. 13.) Zolicoffer has not shown deficient performance or prejudice; thus, this claim is also meritless.

Further, defense counsel attempted to impeach and undermine the credibility of the Government's witnesses at trial. Counsel presented the witnesses' inconsistent trial testimony to the jury. As for the inconsistency in pretrial statements, Zolicoffer picks statements from Boss's unsworn proffer and Libbett's unsworn proffer to claim that Libbett supplied the majority of drugs brought to Traverse City. (ECF No. 2, PageID.26.) But Zolicoffer does not account for the fact that Libbett was incarcerated in Texas until October 2008, and did not begin selling crack in Traverse City until late 2008 and early 2009. (*Zolicoffer*, No. 12-cr-194, Trial Tr. II, at PageID.550, PageID.554-55.) Libbett could not have supplied the drugs to anyone in Traverse City while he was incarcerated.

Zolicoffer also alleges that counsel failed to ask Boss questions pertaining to the actual type of drugs he had transported to Traverse City. But Boss testified on direct examination that he brought crack cocaine to Traverse City for Zolicoffer to sell. (*Id.* at Trial Tr. I, PageID.457.)

During cross-examination, defense counsel questioned Boss about his plea agreement, and about how much cocaine he sold to people other than Zolicoffer in Traverse City. (*Id.* at Trial Tr. I, PageID.460-67.)

In a supplement, Zolicoffer also argues that counsel failed to introduce witnesses' prior arrests because the witnesses were white drug addicts testifying against an African-American drug dealer. He contends that counsel's racial bias negatively affected his advocacy. (ECF No. 17, PageID.106.) But prior arrests are not admissible under Federal Rule of Evidence 609; only convictions are admissible. Fed. R. Evid. 609; *see also United States v. Edgecombe*, 107 F. App'x 532 (6th Cir. 2004) (a witness's prior arrest for domestic violence could not be used to impeach him on cross-examination, where witness had not been convicted of the offense). And Zolicoffer does not allege that counsel failed to introduce evidence of prior convictions.

In addition, Zolicoffer alleges that trial counsel conceded Zolicoffer's guilt during his opening statement without Zolicoffer's knowledge, consent, or approval. (ECF No. 17, PageID.106.) In opening statement, counsel argued "I'm not suggesting that the evidence is going to show you that Marcus Zolicoffer did not use cocaine or crack cocaine. What I am suggesting is that he did not knowingly and voluntarily join a conspiracy with these people or others to distribute 280 or more grams of cocaine." (*Zolicoffer*, No. 1:12-cr-194, Trial Tr. I, PageID.370.) Counsel did not concede Zolicoffer's guilt. Zolicoffer was charged only with conspiracy to distribute, not with use or possession of crack cocaine. Further, several witnesses testified about Zolicoffer's drug use.

Zolicoffer has failed to overcome the tremendous deference afforded to trial counsel's decisions. Likewise, Zolicoffer has not satisfied his heavy burden of showing that counsel's

15

allegedly-deficient performance was "'so manifestly ineffective that defeat was snatched from the hands of probable victory.'" *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001) (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*)). Therefore, his claims of ineffective assistance of trial counsel are without merit.

### 2. Ineffective assistance of appellate counsel

Zolicoffer claims that "[a]ppellate counsel's performance was constitutionally deficient throughout the entirety of the petitioner's first appeal process." (ECF No. 1, PageID.8.) He argues that appellate counsel "failed to review grand jury transcripts and all discovery material in this case" and that appellate counsel's "preparation only consisted of him reading solely the trial transcripts and sentencing hearing transcripts before filing his Brief of Appellant." (ECF No. 2, PageID.27.) Zolicoffer asserts that appellate counsel's allegedly-deficient performance prejudiced him because counsel presented only "non-winnable" claims, specifically, insufficient evidence to convict beyond a reasonable doubt, prosecutorial vindictiveness in the filing of the 21 U.S.C. § 851 notice of prior drug conviction, and that the district court erred by considering the earlier conviction without having found the fact of conviction beyond a reasonable doubt. (*Id.* at PageID.27-28.)

Appellate counsel created an affidavit where he explained that he did not review Boss's grand jury testimony because trial counsel indicated that Boss did not testify before the grand jury. But appellate counsel received other discovery from trial counsel about Boss. He further explained that neither the grand jury testimony nor discovery was part of the record. Because a direct appeal is limited to review only of matters of the record under Federal Rules of Appellate Procedure 10(a) and 28(e), counsel concluded that the district court record did not support a claim of ineffective

assistance of trial counsel. (ECF No. 13, PageID.80.)  Further, "[a]s a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (internal citations and quotations omitted).  Zolicoffer has not shown that he was prejudiced by appellate counsel's allegedly-deficient performance; thus, this claim is meritless.

**IV.**

For the reasons stated above, Movant's motion to vacate, set aside, or correct the sentence imposed upon him by this Court will be denied.  Because the Court finds that the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), no evidentiary hearing is required.

Pursuant to 28 U.S.C. § 2253(c), the Court must also assess whether to issue a certificate of appealability.  To warrant the grant of a certificate of appealability, Zolicoffer "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The Sixth Circuit has disapproved of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted." *Id.* at 467.  Because Zolicoffer cannot make a substantial showing of the denial of a federal constitutional right with respect to any of his claims, a certificate of appealability will be denied.

A judgment and order will enter in accordance with this opinion.


Date: August 7, 2017        /s/ Janet T. Neff
                            JANET T. NEFF
                            UNITED STATES DISTRICT JUDGE